UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SJF Material Handling, Inc.,

      Plaintiff,

v.                                                            Case No. 08-14187

Motor City Scrap, Inc., *et al.*,                    Honorable Sean F. Cox

      Defendants.
_____/

## **OPINION & ORDER**

      This is essentially a breach of contract case between two commercial entities that had a contract pertaining to the removal and sale of steel from a warehouse.  In addition to breach of contract claims, however, both parties also asserted numerous other claims (a total of thirteen claims and six counter-claims).  Following discovery, the parties filed cross-motions for summary judgment.  These motions have been fully briefed and the Court heard oral argument on December 10, 2009.  For the reasons set forth below, the Court shall GRANT IN PART AND DENY IN PART each of these motions.  The Court shall DENY the motions to the extent that the Court shall deny the requests for summary judgment as to the following three claims, which shall proceed to trial: 1) Plaintiff's Breach of Contract claim (Count I of Plaintiff's Complaint); 2) Defendant's Breach of Contract Claim (Count III of Defendant's Counter-Complaint); and 3) Defendant's Tortious Interference Claim alleging interference with Fairless (Count IV of Defendant's Counter-Complaint).  The Court shall GRANT the motions to the extent that the Court shall dismiss all remaining claims and counter-claims.

BACKGROUND

Plaintiff SJF Material Handling, Inc. ("Plaintiff" or "SJF") filed this action against Defendant Motor City Scrap, Inc. ("Defendant" or "Motor City") on September 29, 2008. Plaintiff's original complaint asserts the following six counts: "Breach of Contract" (Count I); "Quantum Meruit" (Count II); "Fraud" (Count III); "Misrepresentation" (Count IV); "Promissory Estoppel" (Count V); and "Damages" (Count VI).

On November 10, 2008, Motor City filed its Answer and Affirmative Defenses. It also asserted the following six counterclaims: "Count I – Breach of Contract (Value City)," "Count II – Quantum Meruit (Value City)," "Count III – Slander/Defamation (Cinelli)," "Count IV – Tortious Interference (Cinelli)," "Count V – Breach of Contract (Beacon)," and "Count VI - Tortious Interference (Fairless)."

On February 20, 2009, SJF filed a "Motion to Amend" seeking to add additional Defendants and claims. Motor City opposed the motion. In an Opinion & Order issued on April 15, 2009, this Court granted the motion in part and denied it in part.

Thereafter, on April 20, 2009, SJF filed its Amended Complaint asserting the following thirteen counts: "Breach of Contract (Motor City)" (Count I); Quantum Meruit (Motor City)" (Count II); "Fraud (Motor City)" (Count III); "Promissory Estoppel (Motor City)" (Count IV); "Conversion (Motor City)" (Count V); "Breach of Contract (Seskin)" (Count VI); "Quantum Meruit (Seskin)" (Count VII); "Fraud (Seskin)" (Count VIII); "Promissory Estoppel (Seskin)" (Count IX); "Conversion (Seskin)" (Count X); "Aiding and Abetting Conversion (Oleshansky)" (Count XI); "Fraud (Oleshansky)" (Count XII); and "Damages (All Defendants)" (Count XIII).

On August 20, 2009, Motor City filed its First Amended Counterclaim, dismissing two

counterclaims it had previously asserted.  Thus, Motor City now has the following four

counterclaims in this action: "Slander/Defamation (Cinelli)" (Count I); "Tortious Interference

(Cinelli)" (Count II); "Breach of Contract (Beacon)" (Count III); and "Tortious Interference

(Fairless)" (Count IV).

      After the close of discovery, both parties filed motions seeking summary judgment.

This Court's practice guidelines for motions for summary judgment provide, in pertinent part,

that:

> a.  The moving party's papers shall include a separate document entitled
> Statement of Material Facts Not in Dispute.  The statement shall list in separately
> numbered paragraphs concise statements of each undisputed material fact,
> supported by appropriate citations to the record. . .
>
> b.  In response, the opposing party shall file a separate document entitled
> Counter-Statement of Disputed Facts.  The counter-statement shall list in
> separately numbered paragraphs following the order or the movant's statement,
> whether each of the facts asserted by the moving party is admitted or denied and
> shall also be supported by appropriate citations to the record.  The Counter-
> Statement shall also include, in a separate section, a list of each issue of material
> fact as to which it is contended there is a genuine issue for trial.
>
> c.  All material facts as set forth in the Statement of Material Facts Not in Dispute
> shall be deemed admitted unless controverted in the Counter-Statement of
> Disputed Facts.

      Both parties complied with the Court's practice guidelines for motions for summary

judgment such that: 1) along with Motor City's motion and supporting brief it filed a "Statement

of Material Facts Not In Dispute" (Docket Entry No. 35-1, hereinafter referred to as "I-MC")

and 2) along with SJF's Response, SJF filed its "Counterstatement of Material Facts No in

Dispute" (Docket Entry No. 36-2, hereinafter referred to as "I-SJF").  In addition, along with

SJF's Motion for Partial Summary Judgment and supporting brief it filed its "Statement of

Material Facts Not in Dispute (Docket Entry No. 28-2, hereinafter referred to as "II-SJF"); and

2) along with Motor City's Response, Motor City filed its "Counterstatement of Disputed Facts"

(Docket Entry No. 33-1, hereinafter referred to as "II-MC").

The following material facts are gleaned from the parties' statements and the evidence

submitted by the parties.

SJF and Motor City entered into a contract in April of 2009 ("the Contract").  (I-MC at ¶

1; I-SJF at ¶ 1).  A copy of the Contract is attached to Motor City's Motion for Partial Summary

Judgment as Exhibit C.  (I-MC at ¶ 1; I-SJF at ¶ 1).  The Contract contained a clause stating that:

> This agreement constitutes the entire agreement between the parties and shall be
> deemed to supersede and cancel any other agreement between the parties relating
> to the transactions contemplated in this agreement.  None of the previous and
> contemporaneous negotiations, preliminary drafts, or previous versions of this
> agreement leading up to its execution and not set forth in this agreement shall be
> used by any of the parties to construe or affect the validity of this agreement.
> Each party acknowledges that no representation, inducement, or condition not set
> forth in this agreement has been made or relied upon by either party.

(I-MC at ¶ 3; I-SJF at ¶ 3).

The Contract obligated Motor City to pay SJF certain specified prices for scrap steel

removed by SJF from a Levitz Furniture warehouse located at 24 Applegate Drive in

Robbinsville, New Jersey ("the Warehouse").  (I-MC at ¶ 2; I-SJF at ¶ 2).  The parties disagree

as to the payment obligations under the Contract.

SJF contends that the Contract obligated Motor City to pay SJF for all scrap material

removed from the Warehouse.  (II-SJF at ¶ 2).  SJF contends that Motor City was obligated to

pay SJF $350 per gross ton for the first 343 tons of scrap metal removed from the Warehouse,

and $420 per gross ton for all additional scrap material removed from the Warehouse.  (II-SJF at

¶ 3).

Motor City contends that the Contract obligated it to pay SJF for all scrap material that Motor City removed from the Warehouse under its contract.  (II-MC at ¶ 2).  Motor City contends that the Contract obligated Motor City to pay SJF $350 per gross ton for the first 242 tons of scrap material removed from the Warehouse, and $420 per gross ton for all additional scrap material that Motor City removed from the Warehouse under its contract.  (II-MC at ¶ 3).

In any event, it is undisputed that at least 1,586.27 tons of scrap material was removed from the Warehouse.  (II-SJF at ¶ 4; II-MC at ¶ 4).

SJF sold at least $11,308.57 worth of scrap steel taken from the Warehouse directly to Fairless Iron & Metal ("Fairless").  (I-MC at ¶ 4; I-SJF at ¶ 4).

Motor City alleged that SJF defamed Motor City when, on or about May, 2008, "Jerry Sterner contacted Craig Cinelli and told him that Motor City were 'niggers' and that Motor City had been providing SJF with false or falsified documents and information regarding how much steel Cinelli was receiving."  (Ex. E to SJF's Motion for P.Summ. J. at 10).  In response to SJF's Motion, however, Motor City stated that it "has agreed to stipulate to the dismissal of Count I (Defamation/Slander) of its Counterclaims."  (II-MC at ¶ 9).

Motor City did not receive settlement receipts from Fairless until after June 18, 2008. (I-MC at ¶ 5; I-SJF at ¶ 5).

On July 16, 1008, Gregg Oleshansky told SJF representative Kelly Dohm that "[Motor City] ha[s] full intention of making a payment to SJF, probably not until all of the checks have been received and I just need to get all the checks and see what's outstanding."    (I-MC at ¶ 7; I-SJF at ¶ 7).

5

Motor City has not received final payment from Fairless for steel removed from the Warehouse because SJF told Fairless not to pay Motor City.    (I-MC at ¶ 8; I-SJF at ¶ 8).

Motor City paid SJF $100,000 by wire transfer on July 21, 2009.    (I-MC at ¶ 6; I-SJF at ¶ 6).   Motor City has paid SJF a total of $160,726.13 on the Contract to date.  (II-SJF at ¶ 6; II-MC at ¶ 6).

SJF contends, however, that Motor City was obligated to pay SJF a total of $642,223.40 for the scrap material that was removed from the Warehouse.  (II-SJF at ¶ 5; II-MC at ¶ 5). Thus, SJF contends that it is owed an additional $481,497.27 under the Contract.  (II-SJF at ¶¶ 4-7).  Motor City disagrees.

Standard of Decision

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56 (c).  The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

ANALYSIS

6

I.      Neither Party Is Entitled To Summary Judgment On The Breach Of Contract Claims:

At its heart, this is a breach of contract case.  It is undisputed that the parties had a written contract.  Each party claims that the other party breached that contract.  Each party seeks summary judgment as to its breach of contract claim.  As stated below, however, the Court concludes there are factual disputes that preclude summary judgment.

A.      SJF's Breach Of Contract Claim:

SJF claims that Motor City breached the parties' contract by not paying SJF for all the scrap SJF provided to Motor City.  SJF maintains that it is owed $481,497.27 under the contract.

SJF's motion acknowledges that the parties have a contract, and that the parties dispute the proper interpretation of the contract: "Motor City alleges that the contract gave it the right to purchase all of the steel in the Warehouse, while SJF alleges Motor City was hired to broker the sale of material to third-party purchasers."  (SJF's Br. at 2).  SJF contends, however, that even if Motor City's interpretation is correct, the undisputed facts show that Motor City breached the contract and SJF is entitled to $481,497.27 in damages.  SJF arrives at that number by taking the amount of scrap that Motor City acknowledges was removed and applying the contract prices for a total of $642,223.40.  (*Id.*).  SJF then states that because Motor City only paid SJF a total of $160,726.13, it still owes it $481,497.27.

In response, Motor City "certainly admits that, subject to its counterclaims, it may owe SJF money under its contract with SJF for the purchase of steel, SJF's claim for $481,497.27 in damages fails for the simple reason that SJF admits to having instructed a third-party not to pay Motor City at least $153,410, approximately $136,220 of which was to be remitted to SJF under

the Motor City/SJF contract.  Certainly, SJF cannot seek damages from Motor City that it caused itself."  (Motor City's Resp. Br. at 1).

In other words: "Motor City has never denied that, subject to it counterclaims, it owes SJF money for steel purchased under the parties' contract.  Rather, Motor City simply disputes SJF's calculation of those moneys based upon the fact that SJF admits to having instructed Fairless Iron & Metal ("Fairless") not to pay Motor City at least $153,410, of which, approximately $136,220 was to be remitted to SJF under its contract with Motor City."  (*Id.* at 2).  Motor City contends that, "[b]y its actions, SJF has thus run afoul of well-accepted Michigan law that 'a party to a contract cannot prevent, or render impossible, performance by the other party and still recover damages for nonperformance.'"  (*Id.* at 3).  Motor City asserts that "[h]aving actively prevented Motor City's contractual performance by instructing Fairless not to pay Motor City $153,410 of the $481,497.27 it alleges is owed (again leaving aside Motor City's Counterclaims), SJF cannot now be heard to complain that it has not been paid in full."  (*Id.*).

Although Motor City conceded at the December 10, 2009 hearing that it owes SJF approximately $345,000.00 under the contract, there remains a dispute as to the amount owed.  The Court shall therefore deny SJF's request for entry of summary judgment in the amount of $481,497.27.

      B.    <u>Motor City's Breach Of Contract Claim:</u>

Motor City contends that SJF breached the parties' contract by selling some scrap from the Warehouse to a third party (Fairless) when that scrap had to be sold to Motor City under the contract.  Motor City claims it is owed $11,308.57 for this alleged breach.

Motor City contends that, based on the testimony of SJF's own representatives, SJF

breached the contract by selling $11,308.57 worth of steel from the Warehouse directly to Fairless.

In response, SJF states that it "does not dispute that it collected $11,308.57 directly from Fairless for scrap that was removed from the Warehouse."  (SJF's Resp. Br. at 18).  It contends, however, that summary judgment is inappropriate on this claim because issues of fact remain as to how much of that money would have gone to Motor City and how much would have gone to SJF if the steel had gone to Motor City and then been sold to Fairless.  In support of its argument, SJF states:

> All parties agree that SJF and Motor City were to somehow split the money received for the steel, but there is a dispute over the material fact of how much SJF was owed.
>
> Furthermore, Motor City's contention that it is owed $11,308.57 assumes that SJF would receive nothing for that material.  This is obviously untrue, regardless of the interpretation of the contract.  Even under Motor City's read of the contract it was required to purchase the steel from SJF for $420 per ton, then sell it to a third party.  Even if there was not dispute over the addendum and the payment amounts, the measure of Motor City's damages would be $11,308.57 minus whatever it would have had to pay SJF for the steel: $420 times the weight in tons.  Because there are clearly disputes over material fact, however, summary judgment on this issue inappropriate.

(*Id*. at 18-19).

The Court agrees with SJF that, even if it breached the contract by selling a portion of steel from the Warehouse directly to Fairless, summary judgment would be inappropriate because there is a dispute as to the amount of damages Motor City incurred as a result of that breach.

9

II.   Remaining Challenges In Motor City's Motion For Partial Summary Judgment:

On September 15, 2009, Motor City filed its Motion for Partial Summary Judgment.

A.   SJF Agrees That Its Quasi-Contract Claims Fail As A Matter Of Law In Light Of The Undisputed Contract Between The Parties.

In responding to Motor City's motion, SJF agrees that Counts II, IV, VII and IX of its Amended Complaint are quasi-contractual claims that, in light of the parties' agreement that a valid and enforceable contract exists, should be dismissed.  Accordingly, Counts II, IV, VII and IX of SJF's Amended Complaint shall be dismissed.

B.   SJF's Fraud Claims Against Motor City and Seskin Fail As A Matter Of Law, In Light Of The Integration Clause In The Parties' Contract.

Motor City contends that the fraud claims against it and Seskin fail as a matter of law in light of the integration clause in the parties' contract, which provides:

> This agreement constitutes the entire agreement between the parties and shall be deemed to supersede and cancel any other agreement between the parties relating to the transactions contemplated in this agreement.  None of the previous and contemporaneous negotiations, preliminary drafts, or previous versions of this agreement leading up to its execution and not set forth in this agreement shall be used by any of the parties to construe or affect the validity of this agreement. Each party acknowledges that no representation, inducement, or condition not set forth in this agreement has been made or relied upon by either party.

(I-MC at ¶ 3; I-SJF at ¶ 3).  Citing *Northern Warehousing, Inc. v. Department of Education*, 475 Mich. 859 (2006) and *UAW-GM Human Resource Center v. KSL Recreation Corp.*, 228 Mich.App. 486 (1998), Motor City contends that any reliance on pre-contractual representations is unreasonable as a matter of law when the contract contains an integration clause.

In discovery, Motor City asked SJF to specify the misrepresentations that form the basis of its fraud claims and how it relied on those representations.  With respect to Motor City and

10

Seskin, SJF responded as follows:

> See, generally, SJF's Complaint.  **In April 2008**, Defendant Seskin and
> Defendant Oleshansky represented that Motor City would provide brokerage
> services to SJF.  As part of these services, Seskin and Oleshansky told SJF that
> Motor City would collect payment from third parties for the material removed
> from the Warehouse, then remit those payments to SJF.  The representations were
> made to various agents of SJF, including Jerry Sterner.  **SJF relied on these
> representations when it agreed to allow Motor City to collect payment for the
> material.**
>
> **In April 2008**, Seskin and Oleshansky represented that Motor City would use its
> knowledge of the scrap metal industry to find the best price for the material being
> removed from the Warehouse.  **SJF relied on this representation when it
> agreed to pay Motor City for its brokerage services.**
> **In April 2008**, and continuing throughout the duration of the project, Motor City
> representatives classified all the material being removed from the Warehouse as
> scrap.  Motor City agents, including Defendant Seskin, knew that a portion of that
> material could actually be sold as usable, which would bring a higher price than
> scrap.  Without informing SJF, Motor City worked out an agreement with Cinelli
> that allowed Motor City to enjoy an additional profit through the resale of this
> usable material.  Because of this side arrangement Motor City led SJF to believe
> that Cinelli was providing the best price for the material.  **SJF relied on this
> representation, when it agreed to hire Motor City to provide brokerage
> services and to collect payment for the material that was sold to third parties.**

(Ex. F to Motor City's Br. at 7) (emphasis added).

Motor City contends that SJF's discovery responses confirm that it is basing its fraud

claim upon pre-contractual representations because SJF claims to have relied on those

representations by agreeing to the terms of the contract with Motor City.  The Court agrees and

shall grant summary judgment in favor of Motor City with respect to SJF's fraud claims against

Motor City and Seskin (Counts III & VIII).

> C.   SJF's Bad-Faith Fraud Claim Against Oleshanksy Will Be Dismissed For Lack
> Of       Evidentiary Support.

In order to establish a prima facie case of fraud, a plaintiff must prove the following: 1) defendant made a material misrepresentation; 2) defendant knew it was false, or made it recklessly, without any knowledge of its truth as a positive assertion; 4) it was made with the intent that it be relied upon by the plaintiff; 5) plaintiff in fact relied upon the statement; and 6) plaintiff was damaged. *Liberty Heating & Cooling, Inc. v. Builders Square, Inc*., 788 F. Supp. 1438, 1444 (E.D. Mich. 1992); *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330,335 (1976).

In general, the material misrepresentation must be predicated on a statement that relates to a past or present fact. *Hi-Way Motor Co.*, 398 Mich. at 336. If the material misrepresentation in question relates to a future promise, the plaintiff's cause of action lies in contract, not fraud. *Id*. However, there is a narrow exception to the rule. "The exception requires evidence of a fraudulent promise 'made in bad faith without intention of performance.'" *Colby v. Zimmerman*, 2001 WL 1219414 (Mich. App. 2001) (quoting *Hi-Way Motor Co.*, 398 Mich. at 337-38). However, to fall within the bad-faith promise exception, the fraudulent intent must relate to conduct of the actor at the very time of making the representations, or almost immediately thereafter. *Id.; Liberty Heating & Cooling, Inc.*, 788 F.Supp. at 1444. Moreover, "as with any tort claim of fraud, the plaintiff must prove the elements of fraud based on bad-faith promise by clear and convincing evidence." *Colby, supra*, at *1.

Here, Count XII of SJF's Amended Complaint asserts a fraud claim against Oleshansky. Specifically, SJF asserts that Oleshansky: 1) "represented that he had not yet received weight slips or settlements from Fairless and that he would finalize his settlement information and forward payment to SJF as soon as he received the information from Fairless;" (SJF's Am.

Compl. at ¶ 146); 2) "represented to SJF's agent that Motor City intended to remit payment to SJF;" (*Id*. at ¶ 147); and 3) "represented to SJF that Motor City intended to finalize payment once final settlement and payment was received from Fairless.  He further represented that he had been informed that payment would be finalized by August 22, 2008." (*Id*. at ¶ 148).  SJF alleges that "[a]t the time he made such representations and omissions, [Oleshansky] either knew they were false or made them with reckless disregard for the truth or falsity thereof." (*Id*. at ¶ 150).

Motor City contends that these alleged misrepresentations relate to future performance and therefore cannot form the basis of a fraud claim under *Hi-Way Motor*.

In response, SJF notes that under *Hi-Way Motor*, a future promise can provide the basis for a fraud claim if it is made "in bad faith without intention of performance." (SJF's Response Br. at 12.  SJF then broadly asserts that a reasonable jury could conclude that Defendants made false representations "and that any statements regarding future promises were made in bad faith without intention of performance, Defendants' motion for summary judgment on the fraud claims should be denied." (*Id*.).  SJF has not, however, identified any *evidence* that would support that the alleged representations made by Oleshansky were made in bad faith and without intention of performance.  (*See* 12/10/09 Hrg. Tr.).  Accordingly, the Court shall dismiss the bad-faith fraud claims against Oleshansky.

>D.      SJF's Remaining Tort Claims Also Fail Because They Are Not Based On The Breach Of A Duty Separate And Distinct From Breach Of Contract.

SJF has also asserted the following tort claims: "Conversion (Motor City)" (Count V); "Conversion (Seskin)" (Count X); and "Aiding and Abetting Conversion (Oleshansky)" (Count XI).

In its brief, Motor City contends that all of Plaintiffs' tort claims fail under the *Hart Doctrine* because in actions between two contracting parties, there must be some breach of a duty distinct from breach of contract in order to pursue a tort claim. *Hart v. Ludwig*, 347 Mich. 559 (1956).

In response, SJF acknowledges that Motor City has "argued that SJF's tort claims must be dismissed because *Hart* and the economic loss doctrine that came out of it conclusively apply to bar them." (SJF's Resp. at 2). SJF then asserts that "[b]ecause the economic loss doctrine does not apply to contracts for services, it is inapplicable here." (*Id*.). SJF further asserts that even if the Court concludes that the economic loss doctrine applies to service contracts, the doctrine does not bar SJF's tort claims here because "Hart and its progeny allow tort claims as long as they are based on a 'breach of a duty distinct from breach of contract.'"

SJF then proceeds to argue that its conversion claims are based on the violation of a duty that exists independent of the contract. (SJF's Br. at 6-10). As the Court understands SJF's position, SJF asserts that Motor City collected money from third parties for scrap under the contract. SJF further alleges that Motor City spent those funds. It contends that by spending money it was supposed to pay SJF, Motor City's "actions are clearly separate from the contract, and form the basis for a textbook case of conversion." (SJF's Response at 8).

The Court concludes that this argument is without merit. It is undisputed that "the Contract obligated Motor City to pay SJF certain specified prices for scrap steel removed by SJF from a Levitz Furniture warehouse located at 24 Applegate Drive in Robbinsville, New Jersey ("the Warehouse"). (I-MC at ¶ 2; I-SJF at ¶ 2)." Thus, Motor City's obligation to pay SJF derives from the Contract. If SJF could convert its breach of contract claim into a tort claim of

14

conversion by simply asserting that Motor City *spent* the money it was supposed to pay it under the contract, that would mean that virtually every contract claim could also be pursued as a conversion claim. The Court shall grant summary judgment in favor of Motor City with respect to SJF's conversion claims because these claims are not based upon a breach separate and distinct from the Contract.

      E.      <u>SJF Concedes That Its "Damages" Count Should Be Dismissed Because It Does Not State A Separate, Cognizable Claim.</u>

Count XIII of SJF's Amended Complaint, the last count, is titled "Damages (All Defendants)." This Count simply restates and realleges the allegations in the preceeding counts and then alleges that as a "result of the actions or inactions of Defendants, SJF has suffered damages in excess of $499,115.60." (Am. Compl. at 17).

Motor City contends that this count "fails to allege the existence of any separate cognizable cause of action and should therefore be dismissed as a matter of law." (Motor City's Motion at 17). At the December 10, 2009 hearing, SJF's counsel acknowledged that Count XIII should be dismissed. Accordingly, the Court shall dismiss Count XIII.

III.      <u>Remaining Challenges In SJF's Motion For Partial Summary Judgment:</u>

On July 31, 2009, SJF filed its Motion for Partial Summary Judgment. In this motion, SJF seeks entry of summary judgment in its favor with respect to Counts I (Slander/Defamation) and II and IV (Tortious Interference) of Motor City's Amended Counter-Complaint.

      A.      <u>Motor City Stipulates To Dismissal Of Its Defamation/Slander Counter-Claim.</u>

In response to SJF's Motion, Motor City states that it stipulates to the dismissal of Count I (Defamation/Slander) of its Counter-Complaint. (II-MC at ¶ 9; *see also* Motor City's Resp. at

15

1 n.1).  Accordingly, Count I of Motor City's Counter-complaint shall be dismissed.

       B.     <u>Motor City's Tortious Interference Counter-Claims:</u>

Motor City has asserted two tortious interference claims against SJF, one relating to Cinelli Iron & Metal ("Cinelli")(Count II of Motor City's Counter-Complaint) and one relating to Fairless Iron & Metal LLC ("Fairless") (Count IV of Motor City's Counter-Complaint).

A claim of tortious interference with business relationship under Michigan law requires proof of:  1) the existence of a valid business relationship or expectancy; 2) knowledge of that relationship or expectancy on the part of the defendant; 3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship or expectancy, and 4) resulting damage to the plaintiff.  *Via The Web Designs, L.L.C. v. Beauticontrol Cosmetics, Inc*., 148 Fed.Appx. 483 (6th Cir. 2005) (quoting *Badiee v. Brighton Area Sch*., 265 Mich.App. 343 (2005)).

The third element of the tort requires the plaintiff to demonstrate that the third party was induced to break off the business relationship "by an intentional act that is either: (1) wrongful per se; or (2) lawful, but done with malice and unjustified in law."  *Via The Web Designs, L.L.C., supra* (citing *CMI Int'l, Inc. v. Intermet Int'l Corp*., 251 Mich.App. 125 (2002)).  Under the latter instance, the plaintiff "necessarily must demonstrate, with specificity, affirmative acts by the [defendant] which corroborate the unlawful purpose of the interference."  *Id.*

       1.     <u>Motor City's Tortious Interference Claim Relating To Cinelli Shall Be Dismissed Because Motor City Cannot Establish Causation.</u>

SJF challenges this claim, asserting that Motor City cannot establish the essential elements.  SJF does not appear to dispute the first two elements (i.e., that Motor City had a valid

business relationship or expectancy with Cinelli and that SJF was aware of it).  SJF does dispute, however, the third and fourth elements.  SJF contends that, based on Motor City's discovery responses, Motor City's claim is based upon three different actions: 1) Jerry's Sterner's alleged defamatory comments about Motor City; 2) Jerry Sterner's phone calls to Cinelli; and 3) SJF's attempts to convince Motor City to sell material from the Warehouse to one of Cinelli's competitors. (SJF's Response Br. at 9; Ex. E at 11).  SJF contends that Motor City can present no evidence that would allow a reasonable juror to conclude that SJF induced or caused Motor City's relationship with Cinelli to end.  (SJF's Resp. Br. at 8).  SJF also contends that Motor City has not established that it incurred any damages as a result of any actions by SJF.

In response, Motor City's Brief appears to assert that SJF interfered with its relationship with Cinelli in two ways.

First, Motor City asserts that "SJF admits that Gerald Sterner called Cinelli daily and repeatedly – disrupting Cinelli's business."  The only evidence in support of this assertion, however, is Sterner's deposition testimony, wherein he testified that he had many conversations Cinelli during the project and "Sometimes I'd call him two or three times a day."  (*See* Ex. 1 to Motor City's Br. at 34).  As SJF notes, Motor City has not submitted any testimony from Cinelli indicating that the calls were excessive or that Cinelli was frustrated by the calls from SJF or stopped doing business with Motor City because of the calls.  While SJF's Jeffrey Seskin suspects that Cinelli stopped doing business with Motor City because of Sterner's phone calls, even Seskin acknowledged, during his deposition, that Cinelli had not indicated why Cinelli stopped doing business with Motor City:

> Q.     Maybe you can explain to me why Cinelli would stop doing business with
>         Motor City because of the actions of folks that work for a company in

17

> Minnesota?
> MR. ABEL: Objection, calls for guessing.
> A.   I don't know Cinelli's feelings. I just know that we don't do business any more because of that situation.
> Q.   Did Cinelli actually tell you why they were no longer doing business with you?
> A.   They won't take our phone calls.

(Seskin Dep., attached as Ex. G to SJF's Br., at 32).

Second, Motor City asserts that SJF improperly interfered with its relationship in that "SJF stopped filling Cinelli's bins with scrap from the warehouse, instead filling bins belonging to Cinelli's competitors."  (Motor City's Br. at 5).  Motor City asserts that "SJF *presumably* took this action with the understanding that making it appear as if Motor City was selling scrap from the warehouse to its competitor *would likely* disrupt Cinelli's relationship with Motor City and thus provide SJF with an opportunity to remove Motor City and Cinelli from the warehouse scrap deal."  (*Id.*) (emphasis added).

Again, Motor City is speculating as to reasons why Cinelli stopped doing business with it.  Motor City has not provided any admissible evidence as to why Cinelli stopped doing business with Motor City.  Absent such evidence, the Court does not believe that Motor City can meet the third element – an intentional interference by the defendant that *induced or caused* the termination of the relationship.

The Court shall therefore grant summary judgment in favor of SJF with respect to Count II of Motor City's Counter-Complaint.

       2.     <u>Motor City's Tortious Interference Claim Relating To Fairless Shall Proceed To Trial.</u>

In Count IV of its Counter-Complaint, Motor City alleges that it had a valid business

18

expectancy with Fairless and that SJF interfered with that relationship by "telling Fairless not to pay Motor City for the scrap steel that Fairless purchased from Motor City." (Counter-Complaint at ¶ 35). Motor City alleges that SJF's conduct "caused a breach or termination of Motor City's relationship or expectancy with its clients, and resultant damage to Motor City. Specifically, Fairless has withheld thousands of dollars that it properly owes Motor City as a result of Fairless' purchase of scrap steel from Motor City." (*Id*. at ¶ 37).

In response, SJF acknowledges that taking the facts in the light most favorable to Motor City, "there is evidence on the record that would arguably allow a reasonable juror to conclude that SJF intentionally convinced Fairless not to pay Motor City." (SJF's Resp. Br. at 15). SJF asserts that this claim should still be dismissed because it did not have an improper motive in getting Fairless not to pay Motor City and because Motor City has not submitted evidence of its damages.

As to the damages issue, Motor City contends that it was not until the "close of discovery that SJF admitted to having told Fairless not to pay Motor City, thereby providing Motor City with information necessary to fully analyze its claim." (Motor City's Resp. Br. at 11). Motor City contends that "[n]ow that Motor City fully understands SJF's actions, it can calculate its damages based upon SJF's own admissions. To whit, SJF admits that Fairless has not paid Motor City for 322.97 gross tons of scrap steel and light iron that had been removed from the Warehouse from June 4, 2008 to June 10, 2008," and thus, "[b]ased on a contractual price of $475 per on for this steel, SJF's intentional interference has resulted in damages to Motor City in the amount of $153,410." (*Id*.).

With respect to its position that it actions were justified, SJF claims that it had a

legitimate business purpose for its actions:

> Motor City has alleged that SJF told Fairless not to send payment to Motor City. SJF does not deny this to be the case.  All of the evidence on the record, however, indicates that SJF did so because it was concerned that it was not receiving full payment for the material being shipped from the Warehouse.

(SJF's Br. at 16).

Even if it a reasonable juror could view SJF's explanation as a legitimate business purpose, the issue of justification is generally an issue for the jury.  *See National Pharmaceutical Svs. v. Harrison Comm. Hosp.*, 67 Mich.App. 286, 294 (1976) ("The issue of justification for the breach is a jury question."); *Greenwald v. Greenwald*, 480 Mich. 1158 (2008) ("This Court has explained that 'No categorical answer can be made to the question of what will constitute justification, and it is usually held that this question is one for the jury.'")

Accordingly, the Court shall deny summary judgment with respect to Count IV of Motor City's Counter-Complaint.

## CONCLUSION

As set forth above, the Court hereby GRANTS IN PART AND DENIES IN PART the parties' cross-motions for summary judgment.

The Court DENIES the motions with respect to the following claims, which shall proceed to trial:  1) Plaintiff's Breach of Contract claim (Count I of Plaintiff's Complaint); 2) Defendant's Breach of Contract Claim (Count III of Defendant's Counter-Complaint); and 3) Defendant's Tortious Interference Claim alleging interference with Fairless (Count IV of Defendant's Counter-Complaint).

The Court GRANTS the motions with respect to the remaining claims and counter-claims

and hereby DISMISSES the remaining claims and counter-claims.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  December 15, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 15, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager